12129

KLINE v. INDEPENDENT ORDER OF ODD FELLOWS *ET AL.*

(136 S. E., 216)

1. BENEFICIAL ASSOCIATIONS—DRAFTS ON TREASURER OF ASSOCIATION HELD NOT ISSUED IN CONFORMITY WITH RULE OF ASSOCIATION AND NOT BINDING OBLIGATION.—Drafts on treasurer of beneficial association, drawn by chairman of board of trustees and countersigned by self-styled superintendent of orphanage, purporting to be in payment of salary of former superintendent, *held* not to constitute binding

obligations, in view of noncompliance with rule of association governing issuance of drafts.

2. BILLS AND NOTES—UNACCEPTED DRAFT CREATES NO OBLIGATION.— No obligation arises from or is created by draft before it is accepted.

3. BENEFICIAL ASSOCIATIONS—CUSTOMARY MANNER OF HANDLING BILLS HELD NOT TO VALIDATE DRAFTS ON TREASURER, NOT DRAWN IN CONFORMITY TO ASSOCIATION RULES.—Drafts on treasurer of benefit association, not drawn in conformity with rule of association, *held* not binding obligations, notwithstanding custom in manner of handling bills.

4. BENEFICIAL ASSOCIATIONS—DRAFTS AGAINST TREASURER OF ASSOCIATION, IF CONSTRUED AS WRITTEN ACKNOWLEDGMENT OF INDEBTEDNESS OTHERWISE BARRED BY LIMITATION, HELD INSUFFICIENT TO SUPPORT RECOVERY IN ACTION THEREON (CODE CIV. PROC. 1922, § 353).— Drafts on treasurer of benefit association made basis of suit after statute of limitations had run against original cause of action, if construed as written acknowledgments of the original indebtedness tolling the statute, *held* insufficient to warrant recovery, in view of Code Civ. Proc. 1922, § 353, requiring suit to be brought on the original cause of action, and in view of absence of evidence of authority of board to make new contract or keep alive one against which time was running.

Before ANSEL, J., Greenville,, October, 1923. Reversed, and remanded.

Action by E. A. Kline against the Independent Order of Odd Fellows and others, Judgment, for plaintiff, and defendants appeal.

*Messrs. W. D. Barnett, Cole L. Blease and F. P. McGowan,* for appellants, cite: *Consideration for new promise to pay debt against which Statute of Limitations has run in part:* 47 S. C., 439; 25 S. E., 298. *Executor cannot, by new promise to pay debt of testator, cut off right of the estate to plead Statute of Limitations which had run in part or in whole before promise:* 81 S. C., 503; 62 S. E., 786; 47 S. C. 439; 25 S. E., 298; 51 S. C., 142; 28 S. E., 309; 13 S. C., 40.

*Messrs. Martin & Blythe,* for respondent, cite: *Judgment should be sustained where Court below should have directed verdict for respondent:* Rule 27 of Supreme Court, 1922.

*Evidence as to gift varied terms of written instrument and is inadmissible:* 80 S. C., 38; 52 S. C., 134; 27 S. C., 376; 24 S. C., 124; 13 S. C., 328. *Gift cannot take effect in future:* 107 S. C., 372; 28 S. C., 362; 28 C. J., 648; 12 R. C. L., 931; 28 C. J., 632. *How gift of debt due may be effected:* 107 S. C., 372; 25 S. C., Eq., 13; 24 S. C. L., 314; 28 C. J., 668; 20 Cyc., 1211. *Cited generally:* 52 S. C., 135; 26 S. C., 362.

December 29, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action instituted in September, 1922, for the recovery of judgment against the defendants for $600, with interest from November 4, 1916; that being the sum total of five orders or drafts, alleged to have been given the plaintiff upon the treasurer, in payment of the balance due upon his salary as superintendent of the Odd Fellows Orphanage; he having filled that position for about three years prior to May, 1916.

It appears that at a meeting of the Grand Lodge of the order, held at Greenville in May, 1916, a resolution was adopted abolishing the office of superintendent of the orphanage, an institution located near Greenville, under the care and control of trustees elected by the Grand Lodge. The plaintiff had been superintendent for about three years prior to that time, and had an open account of $1,500 balance due him on account of salary. Between May, 1916, and November, 1916, he received on account $900 from the treasurer, upon order or drafts drawn upon him by the chairman of the board of trustees and a Mrs. C. B. Bynum, who had, by the resolution referred to of May, 1916, been "placed in charge of the children at the home, under such rules and regulations as the trustees may fix," and who signed as "superintendent."

On November 4, 1916, the five drafts were delivered to the plaintiff, Kline, aggregating $600, drawn upon H. J.

Southern, treasurer of the orphanage, and signed in the same manner as other drafts to Kline for salary had been signed; that is, by the chairman of the board of trustees and the self-styled superintendent of the orphanage. Upon presentation of these drafts to Southern, some three years after they had been issued, he declined to pay them, upon the ground that he had been instructed not to pay Kline more than the $900, which had already been paid. The plaintiff waited three more years before bringing suit, in September, 1922.

The plaintiff bases his action upon the five drafts referred to; two of them were for $150 each, and three for $100 each, aggregating $600; he does not sue upon the original account, offering the drafts as acknowledgments tolling the statute of limitations applicable to his open account, which in September, 1922, when the present action was commenced, had barred an action upon it.

The defendants answered the complaint setting up the statute of limitations to the action as one upon the open account, and, as a further defense, that Kline had made a donation to the defendants of all of his account in excess of $900; they also denied all allegations of the complaint not admitted in the answer.

The case was tried before his Honor, Judge Ansel, of the County Court of Greenville County, and resulted in a verdict in favor of the plaintiff for $600. The defendants have appealed from the judgment entered upon this verdict.

We do not consider it necessary to consider any of the 18 exceptions, except the one assigning error in not directing a verdict in favor of the defendants, upon the ground that the drafts in question did not constitute binding obligations of either of the defendants. The appellants contend that they did not, for the reason that they were not signed by the treasurer and countersigned by the chairman of the board, as required by rule 26 of the rules promulgated for the government of the orphanage.

The drafts were in the same form; the only difference in them was in the number and amount. No. 36 is reproduced as a specimen:

"I. O. O. F. Orphans' Home, Greenville, S. C., Nov. 4, 1916. No. 36. To H. J. Southern, Treasurer: Pay to the order of E. A. Kline $150 (one hundred and fifty and no/-100 dollars), and charge to account of salary. Payable at H. J. Southern, Greenville, S. C.

"J. P. Carlisle, Chairman.

Mrs. C. B. Bynum, Superintendent."

Rule 26 is as follows:

"All bills shall be approved by the resident trustee and the secretary, and all drafts for money shall be signed by the treasurer and countersigned by the chairman."

It is assumed that the officers referred to were the officers of the orphanage, and not of the Grand Lodge; the resident trustee of the board of trustees, the secretary of the board, the treasurer of the board, and the chairman of the board.

In view of the provision that the drafts must be *"signed by the treasurer,"* and of the unusual practice of one signing an order or draft upon himself, it must have contemplated the deposit of funds in a bank by the treasurer and the drawing of checks by him upon that deposit, which checks were to be countersigned by the chairman of the board.

The system provided or contemplated obviously was that a person having a claim against the orphanage should present his claim, approved by the·resident trustee and the secretary, to the treasurer, who should issue his check therefor; countersigned by the chairman of the board; a very simple proceeding, which insured the correctness of every payment, indorsed as it would be, by the approval of at least three officers of the board of trustees.

The plaintiff is shown to have veered far away from this prescribed course. He did not present a bill and, of course, did not have a bill "approved by the resident trustee and secretary"; nor was the draft that of the

treasurer, signed by him, and "countersigned by the chairman" of the board. It was draft *on,* not *by,* the treasurer drawn by the chairman of the board, signed by him as chairman and by Mrs. Bynum, styling herself "superintendent," after the office had been abolished in May preceding. It was nothing more than the draft of the chairman upon the treasurer; a draft not only not accepted by the treasurer but positively refused. It needs no authority for the proposition that an unaccepted draft creates no obligation. The drafts were clearly, therefore, not only not authorized by Rule 26, but positively and plainly in violation of that rule, and not within the power of the chairman to issue.

But, it is insisted, the method prescribed in this instance was in conformity with the universal, the invariable custom of handling bills against the orphanage, and that for that reason the defendants have waived conformity with rule 26. That may have been a cogent argument in a controversy between the orphanage or Grand Lodge and the treasurer, who might be claiming credit in a settlement for money paid out by him in conformity with such custom; but we do not see how the failure of officers to perform a clear duty, under rule 26, regardless of how many times the rule had been violated, can confer a right upon the plaintiff, and make that an obligation of the orphanage or Grand Lodge. It is possible, and doubtless true, that by the previous issuing of drafts, without the presentation of an approved bill, and the payment of the drafts by the treasurer, the orphanage may have waived as to them the requirement of the approved bills; it certainly cannot be held to have waived the requirement that the draft or check in payment shall be signed by the treasurer and countersigned by the chairman, where the treasurer has refused to honor the draft, unless it be established that the custom has extended not only to the payment of drafts, not accompanied by the approved bills, but also to the payment of drafts which, in fact, have *not* been

paid. In other words, the established custom as to other bills falls short of the important element that the drafts were paid, in the case at bar. The established custom goes to this extend: All bills *that were paid by the treasurer* were paid upon presentation of drafts drawn upon him by the chairman and the·superintendent, without the approval of the officers named in rule 26; they manifestly were paid by the check of the treasurer or by cash out of hand; they cer-tainly were paid, then, with the approval of the treasurer. It has not been shown that in a single case the treasurer paid a bill which he did not approve of, simple because a draft had been drawn upon him by the chairman and superinten-dent, he abdicating the authority vested in him by rule 26. If that had been shown, there would have been greater reason for the respondent's position that the mere execution and delivery of a draft by these officers upon the treasurer con-stituted an obligation of the orphanage by reason of the custom.

If it should be contended that the drafts constitute written acknowledgments of the original indebted-ness sufficient to. prevent the bar of the statute, there are two good reasons why this contention cannot be sus-tained: (1) Under such circumstances, section 353 of the Code requires that the action shall be brought upon the original cause of action, and the written acknowledgment shall be evidence to prevent the bar; *the action here is upon* the drafts. (2) There is no evidence tending to show that the .chairman of the board was authorized practically to make a new contract or to keep live one against which time was running.

The judgment of this Court is that the judgment of the county Court be reversed, and that the case be remanded to that Court for judgment in favor of the defendants, under rule 27.

MESSRS. JUSTICES WATTS and STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. JUSTICE BLEASE disqualified.